**Noel LOPEZ–REYES, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 94–70440.**

United States Court of Appeals, Ninth Circuit.

Submitted March 6, 1996.*

Decided March 20, 1996.

---

* The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Xavier J. Vega, Los Angeles, California, for petitioner.

John J. Andre, Philemina McNeill Jones, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for respondent.

Before: PREGERSON and T. G. NELSON, Circuit Judges, and GEORGE,** District Judge.

PREGERSON, Circuit Judge:

Noel Lopez–Reyes petitions for review of the Board of Immigration Appeals' ("BIA") denial of his application for asylum and withholding of deportation under Sections 208(a) and 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a), 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we grant the petition for review.

## BACKGROUND

Noel Lopez–Reyes ("Lopez"), a 21–year–old native and citizen of Guatemala, entered the United States in January 1992. Lopez applied for asylum and withholding of deportation in September of 1992. In June of 1993, the Immigration and Naturalization Service ("INS") issued Lopez an order to show cause why he should not be deported for his unauthorized entry. Lopez conceded deportability, and at a January 10, 1994 merits hearing before an immigration judge ("IJ"), Lopez testified to the following facts in support of his application.

On a night in November of 1991, Lopez and his friend Jairo Lopez ("Jairo") were walking home from church in their home town of Cascerio La Libertad when approximately twenty armed guerillas confronted them. Lopez and Jairo started to run, but the guerillas fired shots into the ground near their feet, which prevented them from running any further. The guerillas hit Lopez and Jairo in the stomach with their rifles. They asked Lopez and Jairo what their names were, and Lopez and Jairo answered. The guerillas told them that they knew who they were and where they lived and demand-

ed that Lopez and Jairo join their cause. Lopez and Jairo refused. The guerillas then demanded that Lopez and Jairo hide a bag of pamphlets containing guerilla propaganda in their homes. Lopez and Jairo refused to take the pamphlets. The guerillas then threatened to kill both Lopez and Jairo. Although the guerillas finally decided to release the boys-to give them a chance to think over their decisions-they warned Lopez and Jairo not to report the incident to authorities.

Lopez has not seen Jairo since that night because Jairo left immediately for Mexico and has remained there ever since. They have, however, been in frequent contact by telephone. Lopez did not return home after the incident either. Instead, he went directly to his aunt's house in another town. He stayed there for approximately one month and then came to the United States.

Since his arrival in the United States, Lopez has spoken to his mother on the phone several times. She told him that in early 1993 several people in civilian clothes came to the fields where Lopez's father works. They were searching for Lopez. Lopez believes that these visitors were guerillas because, according to his mother, they wore the type of boots that guerillas generally wear. Lopez believes that the guerillas were seeking to kill him.

Lopez testified that he does not feel safe in Guatemala because the country is small, the guerillas are everywhere, and as a well-known person in his home town and in the town where his aunt lives, he would be easy for the guerillas to find. Since he arrived in the U.S., Lopez has been living with his brother, a lawful permanent resident of this country.

At the close of Lopez's testimony, the IJ delivered an oral opinion denying Lopez's request for asylum and withholding of deportation based on the IJ's negative evaluation of Lopez's credibility. The IJ gave three reasons for his credibility finding: (1) Lopez did not reference the alleged November 1991 confrontation with the guerillas on his asy-

** The Honorable Lloyd D. George, Chief Judge, United States District Court for the District of Nevada, sitting by designation.

lum application, (2) Lopez did not produce corroboration of his story from his mother or his friend Jairo, and (3) Lopez's account of the guerilla confrontation was in itself hard to believe. The IJ then granted Lopez's alternative request for voluntary departure.

The BIA affirmed the IJ's decision based on the reasons set forth in the IJ decision and dismissed the appeal. This petition for review followed.

## ANALYSIS

### A. Standard of Review

■ When, as here, the BIA clearly incorporates the IJ's decision and fails to perform an independent review of the record,[1] we review the IJ's decision. *Alaelua v. INS,* 45 F.3d 1379, 1381–82 (9th Cir.1995). We review a credibility finding under the substantial evidence standard, *Turcios v. INS,* 821 F.2d 1396, 1399 (9th Cir.1987), and therefore are required to uphold the IJ's finding unless the evidence presented compels a reasonable factfinder to reach a contrary result. *Abedini v. INS,* 971 F.2d 188, 191 (9th Cir. 1992).

■ Although this standard is deferential, the IJ must offer "a specific cogent reason" for his adverse credibility finding, *Turcios,* 821 F.2d at 1399, and the reason set forth must be "substantial and must bear a legitimate nexus to the finding." *Nasseri v. Moschorak,* 34 F.3d 723, 726 (9th Cir.1994). Lastly, when the IJ provides specific reasons for the questioning of a witness's credibility, this court may evaluate those reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credible. *Vilorio–Lopez v. INS,* 852 F.2d 1137, 1141 (9th Cir.1988).

### B. The IJ's Credibility Finding

The IJ found that the "credibility of the respondent [was] less than convincing." (Administrative Record ("A.R.") at 27). The IJ

gave three reasons for this finding: (1) Lopez did not "in any way reference his alleged November, 1991 confrontation with Guatemalan guerillas on his asylum application," (2) Lopez failed to corroborate his testimony with "representations" from either his mother or his friend Jairo, and (3) Lopez's testimony that the guerillas beat him, shot at him, and threatened him with death, but subsequently released him without killing him, was "astonishing" and "not to be believed." (A.R. at 27–28).

1. Lopez's failure to reference the November 1991 incident on his asylum application.

■ The IJ's finding that Lopez failed to reference the November 1991 guerilla incident on his asylum application is entirely without factual support. On his application, Lopez wrote: "[I]n Guatemala I had [problems] with the guerillas because they asked me to join them, but I refused to. When I refused, they death threatened me." Although this may not be the detailed description that Lopez provided in his oral testimony, Lopez testified to one incident during which guerillas made death threats, and he testified that this was the only incident. Therefore Lopez's testimony and his responses on the asylum application must refer to the same November 1991 guerilla confrontation.

■ It is well settled that an applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application. *Aguilera–Cota v. INS,* 914 F.2d 1375, 1382 (9th Cir.1990). As in *Aguilera–Cota,* the requisite nexus here between the reason set forth by the IJ and the negative credibility finding is lacking. Similarly, we conclude that Lopez's failure to file an application that was "not as complete as might be desired cannot, without more, serve as a basis for a finding of lack of credibility." *Id.*

---

1. The BIA cited to *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), without explanation, when it affirmed the IJ's decision "based upon and for the reasons set forth therein." (A.R. at 2). The IJ, however, never mentioned *Elias–Zacarias.* He denied Lo-

pez's asylum and withholding of departure applications solely on credibility grounds. We therefore read the BIA's decision as affirming the IJ's decision solely for the reasons set forth in the IJ decision.

2. Lopez's failure to corroborate his testimony with representations from his mother and his friend Jairo.

 The IJ found that Lopez's credibility was weakened by Lopez's failure to corroborate his testimony with statements or letters from his mother in Guatemala or his friend Jairo in Mexico. Supplying corroborating affidavits, however, has never been required to establish an applicant's credibility. *See Bolanos–Hernandez v. INS,* 767 F.2d 1277, 1285 (9th Cir.1984) (holding that requiring corroborating affidavits would impose an unnecessarily heavy evidentiary burden on the applicant). In fact, the case law emphasizes that the applicant's testimony, if unrefuted and credible, is sufficient to establish the fact that a threat was made. *Bolanos,* 767 F.2d at 1285. Requiring an applicant to present corroborating evidence would make it "close to impossible for [any political refugee] to make out a . . . case [for asylum]." *Id.*

3. The guerillas' release of Lopez.

 The IJ found it "astonishing" that "after being chased by guerillas, shot at by guerillas, and beaten by the same guerillas," Lopez was not then killed. (A.R. at 28).

The IJ, however, did not set forth a "specific cogent reason" for his astonishment. *See Turcios,* 821 F.2d at 1399. His conclusion that the guerillas' actions were "astonishing" was based on personal conjecture about what guerillas likely would and would not do. Because conjecture is not a substitute for substantial evidence, we cannot uphold this finding. *Del Valle v. INS,* 776 F.2d 1407, 1413 (9th Cir.1985).

### CONCLUSION

We conclude that the IJ's stated reasons for his adverse credibility finding were based on an inaccurate reading of the record and on improper inferences. *Del Valle,* 776 F.2d at 1412. Because the IJ failed to provide a legitimate, articulable basis for his negative credibility determination, *Vilorio–Lopez,* 852

F.2d at 1141, we conclude that the IJ's credibility finding is without substantial evidence. We therefore grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.

PETITION GRANTED.