NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GESTON DATILUS, | No. 23-180 |
| Petitioner, | Agency No. A209-386-173 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 2, 2024[**]

Before: OWENS, LEE, and BUMATAY, Circuit Judges.

Geston Datilus, a native and citizen of Haiti, petitions for review the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252(a). We deny the petition.

1. Substantial evidence supports the BIA's adverse credibility finding. We review adverse credibility findings by "[c]onsidering the totality of the circumstances, and all relevant factors," 8 U.S.C. § 1158(b)(1)(B)(iii), and under the substantial evidence standard. *Kumar v. Garland*, 18 F.4th 1148, 1153 (9th Cir. 2021). This standard is "very deferential," and factual findings stand "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014).

When Datilus arrived in California in August 2016, he explained to immigration officials that he left Haiti for the Dominican Republic because "[his] country [wa]s not good," he "c[ouldn't] live comfortably" there, and he "want[ed] to find a better life." Datilus explained that he next came to the United States from the Dominican Republic "because [his] family is poor" and he "want[ed] to be able to support them." When questioned by immigration officials, Datilus answered "No" when asked if anyone had directly threatened or harmed him in Haiti. He also answered "No" when immigration officials asked if he had any fear or concern about returning to Haiti or being removed from the United States. But a few months later, during the December 2016 removal hearing, Datilus testified he left Haiti because "Tipol"—a "local leader" who wanted land owned by Datilus's mother—had killed

2

Datilus's parents and one of his brothers and also threatened Datilus over a land dispute. When asked why he never told immigration officials about this fear of harm, Datilus said he thought immigration officials would perceive him to be "a criminal or a delinquent." But Datilus provided no justification for that belief, only offering, "I just thought that." The inconsistency in Datilus's statements, coupled with his non-explanation, supports the BIA's adverse credibility determination. *See Li v. Garland*, 13 F.4th 954, 961 (9th Cir. 2021) (holding inconsistencies in the petitioner's asylum application, combined with her failure to attempt "to explain why she needed to provide the false information," supported the BIA's adverse credibility finding); *see also Singh v. Holder*, 643 F.3d 1178, 1181 (9th Cir. 2011) (explaining that "cho[o]s[ing] to lie to immigration authorities" is "always . . . substantial evidence supporting an adverse credibility finding" absent a narrow exception for refugees escaping persecution).

2. Substantial evidence also supports the BIA's determination that Datilus was not entitled to CAT protection. We review the BIA's finding for substantial evidence. *Shrestha v. Holder*, 590 F.3d 1034, 1048 (9th Cir. 2010). The petitioner must "establish that it is more likely than not that he . . . would be tortured if removed." 8 C.F.R. § 1208.16(c)(2). We consider "all evidence relevant to the possibility of future torture." 8 C.F.R. § 1208.16(c)(3).

Considering all relevant evidence, the BIA properly denied Datilus's CAT claim. While Datilus testified that Tipol threatened to kill him in Haiti and the Dominican Republic, he provided no evidence that he was directly harmed in either country. While the absence of past torture does not necessarily negate the likelihood of future torture, *Akosung v. Barr*, 970 F.3d 1095, 1105 (9th Cir. 2020), the record does not compel the finding that Datilus will likely be subject to future harm if removed. Datilus left the Dominican Republic in May 2015 after a friend told him that Tipol's men were "still following" him and "could very easily get [him]" in the Dominican Republic. But that is the extent of the risk of future harm alleged. And Datilus has also failed to show that Tipol still has power in Haiti or is even in Haiti. *See Lopez-Reyes v. INS*, 79 F.3d 908, 912 (9th Cir. 1996) (explaining that "conjecture is not a substitute for substantial evidence").

Additionally, the BIA properly denied Datilus's CAT claim because there was "the possibility of relocation within the country of removal." *Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015). While Datilus said he "d[idn't] think it would make that much of a difference" to relocate him because Tipol could send people to kill him, Datilus has acknowledged that one of his sisters lives in Haiti without issue from Tipol and his three siblings living in the Dominican Republic are doing "fine." Given the lack of past torture and the safety of Datilus's family in Haiti and the Dominican Republic, Datilus's CAT claim was properly denied. *See Tzompantzi-*

4

*Salazar v. Garland*, 32 F.4th 696, 704 (9th Cir. 2022) (upholding CAT denial where possibility of safe relocation was "well-established" by petitioner's testimony that he "was never harmed [in relocation area]" and "neither he . . . nor his siblings who still reside there have been subjected to any harm, persecution, or torture" there).

**PETITION DENIED.**