*663 BERZON, Circuit Judge,
dissenting:
The majority affirms the Board’s adverse credibility determination, reasoning that Martinez-Alvarado failed “to mention in her application the principal source of her fear, namely an individual who allegedly threatened her and was involved in the deaths of her father and brother.” Such inconsistency might be sufficient to support an adverse credibility determination, if it existed. Here, however, the Board’s credibility determination relied on a selective reading of the record, “in contravention of the REAL ID Act’s text.” Shrestha v. Holder, 590 F.3d 1034, 1044 (9th Cir .2010); see also 8 U.S.C. § 1158(b)(l)(B)(iii) (requiring consideration of “the totality of the circumstances”).
When read in its totality, Martinez-Alvarado’s initial application differs from her testimony only in its degree of specificity, not its substance. Martinez-Alvarado’s application states that “the leader from the MOP [union]” threatened her father — the same individual about whom she testified in more detail during the removal proceedings. Martinez-Alvarado’s application also revealed that fear of this person led her to flee El Salvador: “Due to death threats from the Union members,” the application stated, “I fled El Salvador to save my life.” Differences in specificity between the application and testimony do not support an adverse credibility determination. See Smolniakova v. Gonzales, 422 F.3d 1037, 1045 (9th Cir.2005) (reversing adverse credibility determination based on petitioner’s failure “to describe all prior incidents of ... persecution ... in the early stages of her application process”); Lopez-Reyes v. INS, 79 F.3d 908, 911 (9th Cir.1996) (holding that petitioner’s credibility was not undermined by a later, more detailed oral testimony of what was described simply as “[guerrillas] death threatened me” in the application)[1]; cf. Zamanov v. Holder, 649 F.3d 969, 974 (9th Cir.2011) (upholding an adverse credibility determination because the petitioner “did not merely elaborate on events that had previously been referenced”).
The Board also based its adverse credibility determination on Martinez-Alvarado’s inability to identify “the name of the union in which her father was involved.” That a then 15-year-old teenager only knew the organization as “MOP Union”— and not its official name — is a “mere omission of details ... insufficient to uphold an adverse credibility finding.” Bandari v. INS, 227 F.3d 1160, 1167 (9th Cir.2000).
Last, the Board found Martinez-Alvarado incredible due to her failure to produce corroborating evidence. An IJ who decides “that the applicant should provide [corroborating] evidence,” 8 U.S.C. § 1158(b)(l)(B)(ii), must give “notice of that decision and provide ... an opportunity to obtain the required evidence,” Ren, 648 F.3d at 1090. Here, however, the IJ failed to provide the latter. Opportunity to obtain corroborating evidence “does not necessarily require two hearings.” Id. at 1092 n. 12. But a continuance was warranted here. At Martinez-Alvarado’s first and only merits hearing, the IJ demanded evidence corroborating her testimony presented that same morning. When she responded that such documents were in El Salvador and offered to “take responsibility for those documents and ... bring *664 them,” the IJ summarily denied her offer. That denial does not qualify as the sort of opportunity “that the statutory text [of 8 U.S.C. § 1158(b)(l)(B)(ii) ] ... mandates.” Id. at 1093.
“Because each of the reasons supporting the adverse credibility determination fails,” Mousa v. Mukasey, 530 F.3d 1025, 1029 (9th Cir.2008), I would find that the “evidence compels a contrary result” as to the credibility finding, Don v. Gonzales, 476 F.3d 738, 741 (9th Cir.2007) (emphasis in the original).
The Board’s conclusion that Martinez-Alvarado also failed to satisfy 8 U.S.C. § 1101(a)(42)’s nexus requirement falls alongside its adverse credibility determination. The Board’s opinion incorporates by reference the IJ’s reasoning. And the IJ, in turn, conditioned his nexus finding on his adverse credibility determination. Thus, in reversing that credibility determination, I would necessarily reverse the nexus finding dependent on it.
As the government acknowledged in its brief, this court “cannot conduct a de novo review of issues not addressed by the agency.” INS v. Ventura, 537 U.S. 12, 16-17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). Thus, I would remand to the Board to reconsider the merits of Martinez-Alvarado’s asylum claim.
For these reasons, I respectfully dissent.

. Because the REAL ID Act "did not strip us of our ability to rely on the institutional tools that we have developed for reviewing an IJ’s credibility determinations ... we have continued to rely on ... aspects of our pre-REAL ID Act caselaw concerning credibility when reviewing post-REAL ID Act asylum applications.” Ren v. Holder, 648 F.3d 1079, 1085 n. 2 (9th Cir.2011) (internal quotation marks and citations omitted).